**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

| | |
|---|---|
| RICHARD TREVINO,<br><br>    Plaintiff,<br><br>vs.<br><br>WOODBURY COUNTY JAIL, LIEUTENANT PHILLIPS, CARLOS LNU, UNITED STATES MARSHALS SERVICE,<br><br>    Defendants. | No. C14-4051-MWB<br><br>**REPORT AND RECOMMENDATION ON MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS WOODBURY COUNTY JAIL, LIEUTENANT PHILLIPS AND CARLOS LNU** |

*TABLE OF CONTENTS*

*I.*     *INTRODUCTION..................................................................2*

*II.*    *OVERVIEW OF TREVINO'S CLAIMS..........................................3*

*III.*   *UNDISPUTED FACTS ..........................................................4*

*IV*     *SUMMARY JUDGMENT STANDARDS ........................................6*

*V.*     *ANALYSIS .......................................................................7*

       *A.*    *Did Trevino Fail to Exhaust The Mandatory Administrative Remedies?................................................................. 8*

       *B.*    *Are There Genuine Issues of Material Facts Concerning The Title II Claim?............................................................... 12*

       *C.*    *Can Trevino Pursue Claims Under Title II Against The Movants?..... 14*

*V.*     *CONCLUSION AND RECOMMENDATION....................................... 16*

## I. INTRODUCTION

Plaintiff Richard Trevino (Trevino) commenced this lawsuit in the Northern District of Texas on June 25, 2014. His pro se complaint (Doc. No. 2) and addendum (Doc. No. 7) name as defendants the Woodbury County Jail (Jail), Lieutenant Phillips (Phillips), Officer Carlos Last Name Unknown (Carlos) and the United States Marshals Service (USMS). Trevino claims that his constitutional rights were violated while he was incarcerated at the Jail and further contends that the defendants violated Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131-12133.[1] He seeks compensatory and punitive damages.

The case was transferred to the Northern District of Iowa on July 1, 2014. Doc. No. 6. The Jail, Phillips and Carlos (collectively, Movants) filed a motion (Doc. No. 12) for summary judgment on October 17, 2014. Trevino did not filed a resistance.[2] Movants seek entry of judgment as a matter of law on all counts, contending (a) Trevino failed to exhaust all available administrative remedies, (b) there is no genuine issue of material fact regarding Trevino's ADA claim and (c) neither the Jail nor the individual defendants in their personal capacities are amenable to suit.

The Honorable Mark W. Bennett has referred the motion to me for the preparation of a report and recommended disposition. No party has requested oral argument and, in any event, I find that oral argument is not necessary. *See* N.D. Ia. L.R. 7(c). The motion is fully submitted and ready for decision.

---

[1] Trevino cites "42 U.S.C. Sections 1231 Et. Seq., of the Americans with Disabilities Act of 1990." Doc. No. 7 at 1. Because pro se complaints are to be construed liberally, *Stringer v. St. James R-1 Sch. Dist.*, 446 F.3d 799, 802 (8th Cir. 2006), I will assume Trevino intended to reference 42 U.S.C. §§ 12131-12133.

[2] A pro se litigant generally is not excused from complying with procedural rules. *McNeil v. United States*, 508 U.S. 106, 113 (1993). Because Trevino failed to resist the motion, it could be granted on that basis alone. *See* Local Rule 7(f) ("If no timely resistance to a motion is filed, the motion may be granted without notice."). However, because the motion seeks relief that would terminate the case as to the Movants, I will address its merits.

## II. OVERVIEW OF TREVINO'S CLAIMS

Trevino's complaint and addendum include the following allegations:

On September 10, 2012, USMS transported Trevino to the Jail for confinement after he was charged in the Northern District of Iowa with conspiracy to distribute methamphetamine and possession of a firearm in furtherance of a drug trafficking crime.[3] Trevino was housed at the Jail from September 10, 2012, until February 25, 2014. Throughout this time, he suffered from a spinal disease that confined him to a wheelchair and also caused incontinence, thus requiring his use of diapers.

The USMS Deputy who escorted Trevino to the Jail forcibly removed his religious jewelry and threw it into the garbage, along with Trevino's legal paperwork. Once at the Jail, due to the lack of handicap accessible or suitable facilities, Trevino was placed in solitary confinement. The furniture in his cell was inadequate for an inmate with significant physical disabilities. The bed had no guard rails to prevent him from falling, nor did it have a "jungle gym" apparatus to enable him to independently transport himself to and from his wheelchair. Thus, he had to rely on Jail staff to move him. Further, the toilet in his cell did not have guard rails to help him transfer himself onto the toilet or balance once there, effectively depriving him from using the toilet without assistance. The showers at the Jail did not have a seat, railing or other handicap accommodations. Nor were there secured chairs, benches, tables or other furniture that Trevino could use.

Trevino's cell did not have an emergency call button, meaning that in order for Trevino to receive assistance he had to yell for help. Jail staff generally ignored him and then only responded after multiple requests for help. Eventually, when Jail staff did communicate with him or come to assist him, Trevino was harassed and his special needs were disregarded. Specifically, Jail staff refused to give him clean clothes or showers for a week at a time and failed to provide a sealed container in the cell for his soiled diapers. Trevino was forced to pile the soiled diapers in the corner of his cell which

---

[3] Trevino's criminal case was this court's case number 12-CR-4085-MWB (the Criminal Case).

created a stench that other inmates and Jail staff could smell. Jail staff, including Carlos and a nurse, made negative remarks about the stench, causing Trevino embarrassment.

Trevino was not allowed contact with other inmates and was generally isolated from others because of his disability. He was denied access to the same programs as other inmates and was not allowed to communicate with them. He was not placed in general population, despite the fact that his disabilities did not pose a security risk or danger. Additionally, Trevino's mother passed away while he was confined and he was denied clergy or proper grief counseling for over four months.

As a result of his isolation, Trevino became depressed and intentionally cut himself. He was then placed in an unclean rubber-padded cell and was provided only a mat and blanket. Despite being in USMS custody, Trevino rarely spoke with USMS employees and saw them only when being transported to court hearings.

### III. UNDISPUTED FACTS

Movants filed a statement of material undisputed facts (Doc. No. 12-1). Trevino did not file a response, nor did he submit his own statement of additional material facts. Trevino is therefore deemed to have admitted Movants' facts, *see* Local Rule 56(b), and the facts set forth below are thus undisputed for purposes of Movants' motion for summary judgment. Additional facts will be discussed as necessary during the analysis of specific claims.

On August 30, 2012, Trevino was indicted in the Northern District of Iowa on federal charges of conspiracy to distribute methamphetamine (Count 1) and possession of a firearm in furtherance of a drug trafficking crime (Count 2). On September 10, 2012, he was detained at the Jail while awaiting resolution of those charges. He was transferred to Linn County Correctional Center on November 20, 2012, but returned to the Jail on December 22, 2012. Trevino remained at the Jail until he was transferred to the custody of the Federal Bureau of Prisons on February 25, 2014, at the conclusion of the Criminal

4

Case. He is now serving his sentence at a federal prison in Texas.

Throughout Trevino's incarceration at the Jail, he suffered from a spinal disease which caused paralysis, rendering him wheelchair bound and incontinent. For his safety and the safety of his fellow inmates, Trevino was housed in a private cell, away from the Jail's general population. Because of his wheelchair and medical needs, Trevino was at risk of harm from other inmates. If permitted to join the Jail's general inmate population, Trevino would have needed to be supervised anytime he was outside his cell, which would have required hiring additional Jail staff. Phillips believed Trevino's isolated cell was in compliance with all ADA guidelines. Additionally, at one point during his confinement, Trevino intentionally cut his arms and, in accordance with Jail policy, was placed in an isolated mental health cell, secluded from the Jail's general population.

The Jail maintained an inmate rule book (the Rule Book) which included an inmate grievance policy that was in effect throughout Trevino's incarceration. The policy outlined the process for inmates to alert Jail administration to violations of civil rights, criminal acts, unjust denials or restrictions of inmate privileges and prohibited acts. An inmate could either file an informal grievance by discussing the issue with Jail staff or submit a formal written grievance within seven days of the alleged misconduct. The written grievance was required to clearly define the situation, state the facts upon which the grievance was based, describe the harm done and request a remedy within the power and control of Jail administration. All formal written grievances were to include the inmate's cell number and signature. Copies of the Rule Book were provided in each cell block, to which Trevino had access during his incarceration.

The Jail maintains a record of all letters, grievances and correspondence from inmates. Each item of correspondence is known as a "kite," and a copy of each kite is placed in the inmate's personal file. Trevino's personal file contains kites relating to his allegations of isolation for inappropriate reasons. However, none of his kites mention other allegations set forth in his complaint and addendum in this case, such as harassment, deprivation of clean clothes, a shower or a sealed container for his soiled diapers, denial

5

of grief counseling or clergy, or that his cell did not have handicap accessible toilets, facilities or furniture.

## IV. SUMMARY JUDGMENT STANDARDS

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id*. Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id*.

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of

the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods,* 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

## V.   ANALYSIS

In his complaint and addendum, Trevino alleges the Jail and its staff violated his constitutional rights and Title II of the ADA[4] through various acts and omissions. In

---

[4] There are three areas of the ADA: (1) employment (Title I), (2) public services (Title II) and (3) public accommodations and services operated by private entities (Title III). Pub. L. No. 101-336, 104 Stat. 327 (1990). Trevino does not state which title he relies on. However, he was not employed by the Jail and the Jail is not a private entity offering public accommodations. As such, I assume he brings his claim under Title II.

essence, he claims Jail staff (1) segregated him from the general inmate population due to his disability for discriminatory purposes, (2) verbally harassed him because of his disability, (3) failed to give him a shower or clean clothes for up to a week at a time, (4) failed to provide a sanitary sealed container for his soiled diapers, (5) failed to provide clergy for grief counseling and (6) failed to provide adequate furniture, facilities and accommodations for his disability.

Movants allege Trevino failed to exhaust all available administrative remedies as required by the Prisoner Litigation Reform Act, 42 U.S.C. § 1997e (PLRA), causing his claims to fail as a matter of law. They also argue that summary judgment is appropriate because there are no genuine issues of material facts regarding Trevino's Title II claim. Finally, Movants contend that they are immune from actions brought pursuant to Title II. I will address each argument separately below.

### A. *Did Trevino Fail to Exhaust The Mandatory Administrative Remedies?*

Movants argue Trevino's claims must fail as a matter of law because he did not exhaust all available remedies prior to filing his lawsuit. They contend that under the PLRA, Trevino was required to not only submit written grievances regarding any allegations of mistreatment, but also to follow the correct procedure when filing the grievances. In addition, Movants argue that Trevino was required to exhaust any available remedies through the Department of Justice (DOJ).

The PLRA governs actions regarding prison conditions brought pursuant to 42 U.S.C. § 1983 or any other federal law. 42 U.S.C. § 1997e(a). Among other things, PLRA states that no such action may be brought "until such administrative remedies as are available are exhausted." *Id.* This exhaustion requirement applies to any inmate lawsuit based on prison conditions, regardless of whether the lawsuit revolves around general circumstances or particular incidents and whether the lawsuit alleges excessive force or some other wrong. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). It requires that all prisoner-plaintiffs must first exhaust all available administrative remedies prior to

8

bringing a lawsuit. *Id.* Failure to exhaust all available administrative remedies is grounds for mandatory dismissal. *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000). The available remedies must be properly exhausted in compliance with all prison grievance procedures, deadlines or preconditions. *Jones v. Bock*, 549 U.S. 199, 218 (2007). The prison's requirements for grievance procedures, not the PLRA, define the specific remedies that must be exhausted and the manner for doing so. *Id.; see also King v. Iowa Dep't of Corr.*, 598 F.3d 1051, 1053-54 (8th Cir. 2010). Failure to exhaust remedies is an affirmative defense. *Jones,* 549 U.S. at 216.

Upon careful review of the record, including the Rule Book and Trevino's prisoner file, I find that Trevino failed to properly exhaust all available remedies for the allegations described in his complaint and addendum. The Rule Book outlines the procedure for filing grievances regarding violations of civil rights, criminal acts, unjust denial or restriction of inmate privileges and prohibited acts by facility staff. Doc No. 12-3 at 23. A formal grievance must be in writing, submitted within seven days of the alleged violation and request a specific remedy. *Id*. at 24. Additionally, the prisoner must include his signature and assigned cell number on all complaints or grievances. *Id*. at 24. To properly exhaust the available remedies under the PLRA, Trevino had to follow these guidelines and deadlines.

Trevino submitted a number of kites, or written grievances, throughout his confinement at the Jail, most requesting contact with his attorney or father and a fixed television set. The record demonstrates that he did not complain in writing that he was a victim of harassment, that he was deprived of clean clothes and a shower for a week, that the Jail failed to provide him with a sealed container for his soiled diapers, that the Jail denied him clergy for grief counseling for over four months, or that his cell did not provide for handicap accessible restroom facilities and furniture. Doc. No. 12-3 at 18, ¶ 8. Therefore, all claims based on these allegations must be dismissed because Trevino failed to exhaust available administrative remedies.

Trevino did submit some grievances of potential relevance, including one dated April 15, 2013, that asked, in effect, if he needed to make a specific request each time it was necessary to dispose of his soiled diapers. Doc. No. 12-3 at 33. He stated that this had been an issue "since I got here." *Id*. When he submitted this grievance, Trevino had been back at the Jail for nearly four months after a brief stay at another facility. Doc. No. 12-1 at 1, ¶ 3. Trevino's statement that the Jail's diaper disposal practices had been a problem "since I got here," thus makes it clear that he failed to comply with the Rule Book's seven-day deadline for submitting grievances. This deprived the Jail of the opportunity to address the alleged violation in a timely and effective manner. Any claim in this case that the Jail's diaper-disposal practices violated Trevino's rights must be dismissed due to his failure to timely exhaust administrative remedies.

Trevino also submitted two grievances complaining that he was being improperly isolated from other inmates due to his disability. Those were dated March 22, 2013, and March 26, 2013.[5] Doc. No. 12-3 at 34-35. The Movants acknowledge that he "possibly complied with the Jail's grievance policy regarding this claim." Doc. No. 12-2 at 7. However, they argue that Trevino was required to file a complaint with the United States Department of Justice (DOJ) as a condition of filing suit based on alleged discriminatory treatment. Outside of the Jail's grievance policies, the DOJ has additional administrative remedies available to individuals who believe they have been subjected to discrimination on the basis of disability by a public entity. 28 C.F.R. § 35.170(a). Those individuals may file a complaint with the DOJ to remedy the alleged ADA violations or discrimination. *Id*.

The text of the PLRA does not limit "available" administrative remedies to those that are internal to the prison system in which the prisoner is confined. *See, e.g., William G. v. Pataki*, 03 Civ. 8331 (RCC), 2005 WL 1949509, at *5 (S.D.N.Y. Aug. 12, 2005)

---

[5] The March 26, 2013, grievance also referenced a medical need (pain medication) and stated a desire for more exercise. Doc. No. 12-3 at 34. Based on his complaint and addendum in this case, Trevino does not appear to be making claims arising from those complaints.

10

(citing *Burgess v. Garvin*, No. 01 Civ. 10994 (GEL), 2003 WL 21983006, at *3 (S.D.N.Y. Aug. 19, 2003), *recon. granted on other grounds*, 2004 WL 527053 (S.D.N.Y. Mar. 16, 2004)). Thus, several federal courts have held that all available DOJ remedies must be exhausted to satisfy PLRA. *Id.; see also Brown v. Cantrell*, No. 11-CV-00200-PAB-MEH, 2012 WL 4050300, at *3 (D. Colo. Sept. 14, 2012); *Haley v. Haynes*, Civil Action No. 11-CV-00200-PAB-MEH, 2012 WL 112946, at *1 (S.D. Ga. Jan. 12, 2012). However, at least one court has reached the opposite conclusion. *Veloz v. New York*, 339 F. Supp. 2d 505, 517–18 (S.D.N.Y. 2004) (holding that a federal inmate need not file a complaint with the DOJ in order to exhaust disability discrimination claims).

Having carefully considered the arguments on both sides of the issue, I conclude that PLRA does, in fact, require exhaustion of both internal and external administrative remedies prior to filing suit. The statutory text makes no distinction, instead stating plainly that no action may be brought "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). A DOJ complaint is an administrative remedy that is "available" to an inmate facing discriminatory treatment due to a disability. Thus, under PLRA an inmate must exhaust the DOJ remedies prior to filing a federal lawsuit.

Here, Movants have established that Trevino did not file a complaint with DOJ based on the alleged ADA violations described in his complaint and addendum. Doc. No. 12-1 at 4, ¶ 17. Because Trevino did not properly exhaust all available remedies with regard to any of the claims described in his complaint and addendum, I recommend that Movants' motion for summary judgment be granted. However, because this is a report and recommendation that is subject to review by Judge Bennett, I will discuss the other grounds presented in the motion.

*B.     Are There Genuine Issues Of Material Facts Concerning The Title II Claim?*

Movants argue there are no genuine issues of material facts that prevent entry of summary judgment in their favor on Trevino's ADA claims. In particular, they contend that Trevino was not excluded from a service, program or activity or otherwise discriminated against and, alternatively, that any exclusion was not by reason of his disability.

Title II of the ADA applies to prisons and local correctional facilities. *Pa. Dept. of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998). To establish a violation of Title II, the plaintiff must demonstrate (1) he is a qualified individual with a disability, (2) he was excluded from participation in or denied the benefits of a public entity's services, programs or activities, or otherwise discriminated against by the entity, and (3) that such exclusion, denial of benefits, or other discrimination was by reason of his disability. *Baribeau v. City of Minneapolis*, 596 F.3d 465, 484 (8th Cir. 2010) (*Citing Layton v. Elder*, 143 F.3d 469, 472 (8th Cir. 1998)).

With regard to the first element, Movants do not dispute that Trevino is a qualified individual with a disability. "Disability" is defined as "a physical or mental impartment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1). A qualified individual with a disability is "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provisions of auxiliary aids and services meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(1). Due to a spinal disease, Trevino is a wheelchair-bound paraplegic. This clearly impairs Trevino's ability to walk, a major life activity. *See* 42 U.S.C. § 12102(2)(A).

Turning to the second element, Movants argue that inmate cell assignments and accommodations are not benefits of the Jail's service, program or activity pursuant to

Title II. Defendants rely on a case from the Southern District of California for the proposition that inmate cell assignments are not benefits within the ADA. Doc. No. 12-2 at 10 (citing *Robinson v. Catlett*, 725 F. Supp. 2d 1203, 1210 (S.D. Cal. 2010)). However, the plaintiff in *Robinson* did not allege that he was denied the benefits of the entity's services, programs or activities. 725 F. Supp. 2d at 1210. Instead, the court held that the plaintiff failed to rebut evidence justifying the defendants' challenged actions and decisions. *Id*. *Robinson* does not stand for the proposition that cell assignments are not benefits within the meaning of the ADA.

The Eighth Circuit Court of Appeals has not addressed this specific question. However, it has held that transporting an arrestee to the station house is a service of a police department within the meaning of the ADA, regardless of the fact that the transportation was not voluntary on the arrestee's part. *Gorman v. Bartch*, 152 F.3d 907, 912 (8th Cir. 1998). The court explained:

> the stated purpose of the ADA also demonstrates its applicability to transportation of arrestees. In the statement of findings and purpose at the beginning of the statute, Congress noted that 'discrimination against individuals with disabilities persists in such critical areas as… transportation… institutionalization… and access to public services' and that disabled individuals face the discriminatory effect of 'failure to make modifications to existing facilities and practices.' 42 U.S.C. 12101(a).

*Id*.

By analogy, I find that cell assignment and placement is a service, program or activity of the Jail within the meaning of Title II. Within the same statement of findings and purpose cited in *Gorman*, Congress noted that discrimination persists in institutionalization and stated that the purpose of the ADA is to reduce or eliminate that discrimination. It follows that if transporting an arrestee is a service of the police, then housing an inmate and assigning a cell once an arrestee becomes a ward of the jail is a service of that jail. Jail officials cannot discriminate against disabled persons by failing to make necessary, reasonable accommodations in cell assignment.

13

As for the third element, Movants argue that as a matter of law, they did not discriminate against Trevino on the basis of his disability. Instead, they contend that Trevino was placed in solitary confinement for his own protection, not for the purpose of discriminating against him based on his disability. Movants met their initial summary judgment burden by providing an affidavit from Phillips indicating (a) that at all times she believed the Jail was in compliance with the ADA and (b) that the decision to place Trevino in a solitary cell was not made for discriminatory reasons but, instead, was based on "an actual and legitimate risk of other inmates physically harming him." Doc. No. 12-3 at 18-19, ¶¶ 12-15.

Once Movant's met their initial burden, Trevino had the burden to go beyond his pleadings and, by depositions, affidavits, or otherwise, point to specific facts showing that there is a genuine dispute about these facts. *Mosley*, 415 F.3d at 910. He did not do so. He produced no evidence supporting his claims and did not respond to Movants' statement of undisputed facts. Because Trevino has the burden proof and has failed to show that any genuine issues of material fact exist with regard to the third element of his ADA claim, I recommend that the motion for summary judgment be granted with regard to that claim.

C.   *Can Trevino Pursue Claims Under Title II Against The Movants?*

As an alternative argument, Movants contend that they are not amenable to suit under Title II of the ADA. The grounds for this argument differ as between the Movants. The individual defendants (Lieutenant Phillips and Officer Carlos) contend that they cannot be sued for damages in their individual capacities because Title II permits such actions only as against public entities, not individuals. This is true. *United States v. Georgia*, 546 U.S. 151, 154 (2006); *Dinkins v. Correctional Medical Services*, 743 F.3d 633, 634 (8th Cir. 2014). Thus, to the extent Trevino seeks damages from Phillips and

Carlos in their individual capacities based on alleged violations of Title II, I recommend that the motion for summary judgment be granted.

With regard to the Jail (and the individual defendants in their official capacities), Movants rely on the Eleventh Amendment, which provides states and their agencies with immunity from suits brought by private citizens in federal court. *Tennessee v. Lane*, 541 U.S. 509, 517 (2004). However, Congress may abrogate that immunity if it both (1) enacts a statute that unequivocally expresses an intent to do so and (2) acts pursuant to a valid grant of constitutional authority. *Kimel v. Florida Bd. Of Regents*, 528 U.S. 62, 73 (2000). As for the first requirement, the ADA includes the following text:

> A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State Court … for a violation of this chapter.

42 U.S.C. § 12202. This is an unequivocal expression of Congressional intent to abrogate Eleventh Amendment immunity and, therefore, to permit actions in federal court against a state or its agencies for alleged violations of the ADA. See *Board of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363–64 (2001).

As for the second element, the Supreme Court has held that Congress may not abrogate Eleventh Amendment immunity based on the powers enumerated in Article I of the Constitution. *Id*. at 364. However, the Court noted that Eleventh Amendment immunity is limited by the enforcement provisions of Section 5 of the Fourteenth Amendment. *Id*. Thus, "the ADA can apply to the States only to the extent that the statute is appropriate § 5 legislation." *Id*.

In *Georgia*, the Court held that "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *Id*. (emphasis in original). The Court remanded the case to the district court to "determine on a case-by-case basis (1) which aspects of the State's alleged conduct violated Title II, (2) to what extent such misconduct also violated the Fourteenth Amendment, and (3) insofar as such

15

misconduct violated Title II, but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Id.*

Here, I have already concluded that the Movants are entitled to summary judgment on Trevino's Title II claims. In other words, no aspects of the Movants' alleged conduct violated Title II. Under these circumstances, and because I have also found that Trevino failed to exhaust his administrative remedies, I find that it is unnecessary to undertake a detailed analysis of whether Title II validly abrogates Eleventh Amendment immunity with regard to Trevino's claims. Even assuming it does, I would recommend entry of summary judgment in favor of the Movants for the reasons discussed in sections V(A) and V(B), *supra*.

## VI. CONCLUSION AND RECOMMENDATION

For the reasons set forth herein, I RESPECTFULLY RECOMMEND that the Movants' motion (Doc. No. 12) for summary judgment be **granted** with respect to all Trevino's claims.

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED.**

**DATED** this 22nd day of January, 2015.

                                      _____
                                      LEONARD T. STRAND
                                      UNITED STATES MAGISTRATE JUDGE