# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| RICHARD TREVINO,<br><br>　　　　Plaintiff,<br>vs.<br><br>WOODBURY COUNTY JAIL, LIEUTENANT PHILLIPS, and CARLOS LNU.<br><br>　　　　Defendants. | No. C14-4051-MWB<br><br>**MEMORANDUM OPINION AND ORDER REGARDING MAGISTRATE'S REPORT AND RECOMMENDATION CONCERNING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

_____

## TABLE OF CONTENTS

*I.   INTRODUCTION AND BACKGROUND ............................................. 2*
　　*A.   Procedural Background ................................................................. 2*
　　*B.   Factual Background ...................................................................... 4*
*II.  LEGAL ANALYSIS ............................................................................. 6*
　　*A.   Standard of Review ....................................................................... 6*
　　*B.   Trevino's Objections ..................................................................... 9*
　　　　*1.   Exhaustion of administrative remedies ............................. 9*
　　　　*2.   Evidence of discriminatory intent .................................... 12*
*III. CONCLUSION ................................................................................... 15*

## I. INTRODUCTION AND BACKGROUND

### A. Procedural Background

On June 25, 2014, plaintiff Richard Trevino filed a pro se complaint in the Northern District of Texas. In his complaint, Trevino, an inmate at Federal Correctional Institute Fort Worth, names as defendants the Woodbury County Jail ("the Jail"), Lieutenant Phillips, and Officer Carlos Last Name Unknown (collectively, "defendants," unless otherwise indicated).[1] Trevino claims that defendants violated his constitutional rights while he was incarcerated at the Jail and that defendants violated Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131-12133.

This case was referred to United States Magistrate Judge Leonard T. Strand pursuant to 28 U.S.C. § 636(b)(1)(B). Defendants filed a motion for summary judgment in which they seek dismissal of all claims against them. In their motion, defendants argue that: (1) Trevino failed to exhaust all available administrative remedies as required by the Prisoner Litigation Reform Act, 42 U.S.C. § 1997e (PLRA), causing his claims to fail as a matter of law; (2) there is no genuine issue of material fact regarding Trevino's ADA claim and the summary judgment record shows that Trevino was not excluded from a service, program, or activity or otherwise discriminated against because of his disability, and (3) the Jail and the individual defendants, in their personal

---

[1] Trevino also named the United States Marshals Service ("the USMS") as a defendant. I previously granted the USMS's motion to dismiss and dismissed it from this lawsuit.

capacities, are immune from suit for actions brought pursuant to Title II. Trevino did not file a resistance.[2]

Judge Strand issued a Report and Recommendation in which he recommends granting defendants' motion for summary judgment. Judge Strand found that Trevino failed to properly exhaust all available remedies for the allegations described in his complaint and addendum. Thus, Judge Strand recommends that Trevino's claims be dismissed for failure to exhaust available administrative remedies. Report and Recommendation at 9. Judge Strand further concludes that Trevino failed to show that any genuine issues of material fact existed with regard to the third element of his ADA claim, that defendants discriminated against him on the basis of his disability. Thus, Judge Strand recommends that defendants' motion for summary judgment also be granted on that ground. Report and Recommendation at 14. Judge Strand also concludes that the individual defendants (Lieutenant Phillips and Officer Carlos) cannot be sued for damages in their individual capacities because Title II permits such actions only as against public entities, not individuals. Therefore, Judge Strand recommends that, to the extent Trevino seeks damages from Phillips and Carlos in their individual capacities based on alleged violations of Title II, the motion for summary judgment be granted. Report and Recommendation at 15. Finally, in light of his earlier conclusions, Judge Strand finds it unnecessary to determine whether Title II validly abrogates Eleventh Amendment immunity to the extent Trevino seeks damages from Phillips and Carlos in their individual capacities based on alleged violations of Title II. Therefore, Judge Strand recommends that defendants' motion for summary judgment be granted.

---

[2]As Judge Strand pointed out in his Report and Recommendation, because Trevino failed to resist defendants' motion, it could be granted on that basis alone. *See* Local Rule 7(f) ("If no timely resistance to a motion is filed, the motion may be granted without notice."). Judge Strand, however, addressed its merits.

3

Trevino filed objections to Judge Strand's Report and Recommendation. Trevino objects to Judge Strand's finding that he did not exhaust all available administrative remedies. He argues, for the first time, that defendants prevented him from utilizing the jail's grievance procedure and/or defendants failed to comply with the grievance procedure. Trevino also objects to Judge Strand's finding that defendants did not discriminate against him on the basis of his disability. Trevino argues Lieutenant Phillips's affidavit is deficient and, thererfore, cannot support the motion for summary judgment.³ Defendants filed a timely response to Trevino's objections.

### B. Factual Background

In his Report and Recommendation, Judge Strand found the following facts were undisputed:

> On August 30, 2012, Trevino was indicted in the Northern District of Iowa on federal charges of conspiracy to distribute methamphetamine (Count 1) and possession of a firearm in furtherance of a drug trafficking crime (Count 2). On September 10, 2012, he was detained at the Jail while awaiting resolution of those charges. He was transferred to Linn County Correctional Center on November 20, 2012, but returned to the Jail on December 22, 2012. Trevino remained at the Jail until he was transferred to the custody of the Federal Bureau of Prisons on February 25, 2014, at the conclusion of the Criminal Case. He is now serving his sentence at a federal prison in Texas.
>
> Throughout Trevino's incarceration at the Jail, he suffered from a spinal disease which caused paralysis, rendering him wheelchair bound and incontinent. For his safety and the

---

³Trevino does not to object to Judge Strand's finding that Trevino failed to file a complaint with the DOJ. Trevino also does not object to Judge Strand's finding that the individual defendants are not amenable to suit under Title II of the ADA.

4

safety of his fellow inmates, Trevino was housed in a private cell, away from the Jail's general population. Because of his wheelchair and medical needs, Trevino was at risk of harm from other inmates. If permitted to join the Jail's general inmate population, Trevino would have needed to be supervised anytime he was outside his cell, which would have required hiring additional Jail staff. Phillips believed Trevino's isolated cell was in compliance with all ADA guidelines. Additionally, at one point during his confinement, Trevino intentionally cut his arms and, in accordance with Jail policy, was placed in an isolated mental health cell, secluded from the Jail's general population.

The Jail maintained an inmate rule book (the Rule Book) which included an inmate grievance policy that was in effect throughout Trevino's incarceration. The policy outlined the process for inmates to alert Jail administration to violations of civil rights, criminal acts, unjust denials or restrictions of inmate privileges and prohibited acts. An inmate could either file an informal grievance by discussing the issue with Jail staff or submit a formal written grievance within seven days of the alleged misconduct. The written grievance was required to clearly define the situation, state the facts upon which the grievance was based, describe the harm done and request a remedy within the power and control of Jail administration. All formal written grievances were to include the inmate's cell number and signature. Copies of the Rule Book were provided in each cell block, to which Trevino had access during his incarceration.

The Jail maintains a record of all letters, grievances and correspondence from inmates. Each item of correspondence is known as a "kite," and a copy of each kite is placed in the inmate's personal file. Trevino's personal file contains kites relating to his allegations of isolation for inappropriate reasons. However, none of his kites mention other allegations set forth in his complaint and addendum in this

> case, such as harassment, deprivation of clean clothes, a
> shower or a sealed container for his soiled diapers, denial of
> grief counseling or clergy, or that his cell did not have
> handicap accessible toilets, facilities or furniture.

Report and Recommendation at 4-6.[4]

## II.  LEGAL ANALYSIS

### A.  Standard of Review

Before considering whether or not to accept Judge Strand's Report and Recommendation, I will first set out my standard of review. The applicable statute provides for *de novo* review by the district judge of a magistrate judge's report and recommendation, when objections are made, as follows:

> A judge of the court shall make a de novo determination of
> those portions of the report or specified proposed findings
> or recommendations to which objection is made. A judge of
> the court may accept, reject, or modify, in whole or in part,
> the findings or recommendations made by the magistrate
> judge. The judge may also receive further evidence or
> recommit the matter to the magistrate judge with
> instructions.

28 U.S.C. § 636(b)(1) (2006); *see* FED. R. CIV. P. 72(b) (stating identical requirements); N.D. IA. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's report and recommendation). Thus, "[a]ny party that desires plenary consideration by the Article III judge of any issue need only ask." *Thomas v. Arn*, 474 U.S. 140, 154

---

[4]Trevino did not file a response to defendants' statement of material facts in dispute. He also did not submit his own statement of additional material facts. As a result, Trevino is deemed to have admitted defendants' facts. *See* Local Rule 56(b).

(1985). The United States Supreme Court has explained that, although the statute provides for review when objections are made, the statutory standard does not preclude review by the district court in other circumstances:

> [W]hile the statute does not require the judge to review an issue de novo if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard.

*Thomas*, 474 U.S. at 154. Thus, the specific standard of review may depend upon whether or not a party has objected to portions of the report and recommendation. I will explain what triggers each specific standard of review in a little more detail.

If a party files an objection to a magistrate judge's report and recommendation, the district court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In most cases, to trigger *de novo* review, "objections must be timely and specific." *Thompson v. Nix*, 897 F.2d 356, 358-59 (8th Cir. 1990). However, the Eighth Circuit Court of Appeals has been willing to "liberally construe[]" otherwise general pro se objections to require a *de novo* review of all "alleged errors," *see Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995), and has also been willing to conclude that general objections require "full *de novo* review" if the record is concise, *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994) ("Therefore, even had petitioner's objections lacked specificity, a *de novo* review would still have been appropriate given such a concise record."). When objections have been made, and the magistrate judge's report is based upon an evidentiary hearing, "'the district court must, at a minimum, listen to a tape recording or read a transcript of the evidentiary hearing.'" *United States v. Azure*, 539 F.3d 904, 910 (8th Cir. 2008) (quoting *Jones v. Pillow*, 47 F.3d 251, 252 (8th Cir. 1995), in turn quoting *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989)). Judge Strand did not hold an evidentiary hearing on the motion, nor did he

7

consider oral arguments on the motion. Instead, he considered only the parties' written submissions, and I have done the same.

In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150; *see also Peretz v. United States*, 501 U.S. 923, 939 (1991) (stating that § 636(b)(1) "provide[s] for de novo review only when a party objected to the magistrate's findings or recommendations"); *United States v. Ewing*, 632 F.3d 412, 415 (8th Cir. 2011) ("By failing to file objections, Ewing waived his right to de novo review [of a magistrate judge's report and recommendation on a suppression motion] by the district court."). Indeed, *Thomas* suggests that no review at all is required. *Id*. ("We are therefore not persuaded that [§ 636(b)(1)] requires some lesser review by the district court when no objections are filed.").

Nevertheless, a district court may also review *de novo* any issue in a magistrate judge's report and recommendation at any time. *Id.* at 154. This discretion to conduct *de novo* review of any issue at any time makes sense, because the Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk*, 15 F.3d at 815. Also, the Eighth Circuit Court of Appeals has indicated that, at a minimum, a district court should review the portions of a magistrate judge's report and recommendation to which no objections have been made under a "clearly erroneous" standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that, when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting that the advisory committee's note to FED. R. CIV. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on

the face of the record"). Review for clear error, even when no objection has been made, is also consistent with "retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk*, 15 F.3d at 815.

Although neither the Supreme Court nor the Eighth Circuit Court of Appeals has explained precisely what "clear error" review means in this context, in other contexts, the Supreme Court has stated that the "foremost" principle under this standard of review "is that '[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

I will review Judge Strand's Report and Recommendation with these standards in mind.

### B. *Trevino's Objections*

#### 1. *Exhaustion of administrative remedies*

Trevino first objects to Judge Strand's finding that he did not exhaust all available administrative remedies. Trevino contends that defendants "prevented Plaintiff from utilizing the administrative remedy process, by way of not informing him of the official procedure and by the Defendants themselves, failing to comply with the [grievance procedure]." Trevino's Objections at 5. The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

9

42 U.S.C. § 1997e(a). Thus, there is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court. *See Jones v. Bock*, 549 U.S. 199, 210-17 (2007);); *see also King v. Iowa Dep't of Corr.*, 598 F.3d 1051, 1053-54 (8th Cir. 2010) (holding inmate must complete administrative exhaustion process in accordance with applicable procedural rules, including deadlines, as precondition to bringing suit). "To properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules.'" *Jones*, 549 U.S. at 218 (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). The applicable procedural rules are defined not by the PLRA but by the prison grievance process itself. Id. at 218. However, under the PLRA, failure to exhaust administrative remedies is an affirmative defense, which a prisoner is not required to plead or demonstrate in his or her complaint. *See Jones*, 549 U.S. at 216; *see also Hahn v. Armstrong*, 407 Fed. App'x 77, 78 (8th Cir. 2011); *Lenz v. Wade*, 991, 993 n.2 (8th Cir. 2007); *Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005). Rather, defendants bear the burden to establish a prisoner's failure to exhaust. *See Jones*, 549 F.3d at 216. When the exhaustion defense has been properly raised, the Eighth Circuit Court of Appeals has held that a district court is "obligated" to determine whether or not the administrative remedies have been exhausted. *See Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000).

The Eighth Circuit Court of Appeals has "only excused inmates from complying with an institution's grievance procedures when officials have prevented prisoners from utilizing the procedures or when officials themselves have failed to comply with the grievance procedures." *Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005) (internal citations omitted). The facts alleged by Trevino are distinct from those in cases where a prisoner's explicit and repeated requests for grievance forms were ignored, *see Miller v. Norris*, 247 F.3d 736, 738 (8th Cir. 2001), or where prison officials themselves failed

to comply with grievance procedures, *see Foulk v. Charrier*, 262 F.3d 687, 688 (8th Cir. 2001). Unlike the plaintiffs in *Miller* and *Foulk*, Trevino was able to file a grievance. Although Trevino contends that defendants failed to inform him of the administrative procedures, the summary judgment record belies his assertion. The Jail maintained an inmate rule book which included an inmate grievance policy. Judge Strand specifically found "Copies of the Rule Book were provided in each cell block, to which Trevino had access during his incarceration." Report and Recommendation at 5. Trevino does not point to anything in the summary judgment record which would contradict this finding and my own review of the record reveals none. The Jail maintains a record of all kites from inmates. Trevino's personal file contains numerous kites. This demonstrates that Trevino was aware of how to file formal grievances. Moreover, none of his kites mention allegations, as found in his complaint and addendum, regarding harassment, deprivation of clean clothes, a shower or a sealed container for his soiled diapers, denial of grief counseling or clergy, or that his cell did not have handicap accessible toilets, facilities or furniture.

Thus, I conclude that Trevino did not exhaust his remedies in accordance with 42 U.S.C. § 1997e(a) and his objection to Judge Strand's Report and Recommendation is overruled. Dismissal without prejudice is mandatory under such circumstances. *See Porter v. Sturm*, 781 F.3d 448, 452 (8th Cir. 2015); *see also Hammett v. Cofield*, 681 F.3d 945, 949 (8th Cir. 2012) (per curiam) (affirming, in part, dismissal without prejudice for § 1997e(a) failure to exhaust); *Washington v. Uner*, 273 Fed. App'x 575, 577 (8th Cir. 2008) (per curiam) (modifying district court's dismissal to clarify that §

1997e(a) failure to exhaust is dismissed without prejudice); *Maddix v. Crawford*, 216 Fed. App'x 605, 606 (8th Cir. 2007) (per curiam) (same).[5]

### 2. *Evidence of discriminatory intent*

Trevino's second objection is to Judge Strand's finding that defendants did not discriminate against Trevino on the basis of his disability. Trevino argues that Judge Strand erred in relying on Phillips's affidavit.

In order to prevail on his claim for compensatory damages under the ADA, Trevino must prove that defendants acted with discriminatory intent. *See Meagley v. City of Little Rock*, 639 F.3d 384, 389 (8th Cir. 2011). In *Meagley*, the Eighth Circuit Court of Appeals determined that "deliberate indifference is the appropriate standard

---

[5] Judge Strand also concludes that the PLRA requires exhaustion of both internal and external administrative remedies prior to filing suit. In reaching this conclusion, Judge Strand points out a number of decisions holding that all available DOJ remedies must be exhausted to satisfy the PLRA. *See Brown v. Cantrell*, No. 11–CV–00200–PAB–MEH, 2012 WL 4050300, at *3 (D. Colo. Sept.14, 2012); *Haley v. Haynes*, Civil Action No. 11–CV–00200–PAB–MEH, 2012 WL 112946, at *1 (S.D. Ga. Jan.12, 2012); *William G. v. Pataki*, 03 Civ. 8331(RCC), 2005 WL 1949509, at *5 (S.D.N.Y. Aug. 12, 2005) (citing *Burgess v. Garvin*, No. 01 Civ. 10994(GEL), 2003 WL 21983006, at *3 (S.D.N.Y. Aug.19, 2003), recon. granted on other grounds, 2004 WL 527053 (S.D.N.Y. Mar.16, 2004)). Judge Strand finds that, even if Trevino complied with the Jail's grievance policy regarding his claims, he failed to exhaust an available federal remedy by filing a complaint with the United States Department of Justice ("DOJ"), pursuant to 28 C.F.R. § 35.170(a). Report and Recommendation at 11. Trevino has not objected to this portion of Judge Strand's Report and Recommendation. Judge Strand's determination was not clearly erroneous. While exhaustion of the DOJ remedy is not a prerequisite to a private right of action for non-prisoners under the ADA, *see* 28 C.F.R. § 35.172, App. A., the PLRA imposes such an exhaustion requirement on prisoners. *See Porter v. Nussle*, 534 U.S. 516, 523 (2002). Accordingly, even if Trevino had made formal grievances regarding his ADA claims in compliance with the Jail's grievance policy, he still failed to exhaust his available remedies under § 1997e(a) because he did not exhaust available external administrative remedies prior to filing his lawsuit.

12

for showing intentional discrimination." *Id.* (citations omitted); *see Roberts v. City of Omaha*, 723 F.3d 966, 975 (8th Cir. 2013). The court of appeals noted that "[t]he deliberate indifference standard, unlike some tests for intentional discrimination, does not require a showing of personal ill will or animosity toward the disabled person, but rather can be inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights." *Meagley*, 639 F.3d at 389 (citations and internal quotation marks omitted). Thus, to recover compensatory damages, Trevino must show defendants were deliberately indifferent to his rights under the ADA. *See id.*; *see also Roberts*, 723 F.3d at 975.

Defendants, as the moving party, bear "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue," *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Celotex v. Catrett*, 477 U.S. 317, 323 (1986)), and demonstrating that they are entitled to judgment according to law. *See Celotex*, 477 U.S. at 323 ("[T]he motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."). Defendants have met their initial burden. They argue that they did not discriminate against Trevino on the basis of his disability. Instead, they contend that Trevino was placed in solitary confinement for his own protection, not for the purpose of discriminating against him based on his disability. They have buttressed this argument by providing an affidavit from Phillips indicating (a) that at all times she believed the Jail was in compliance with the ADA and (b) that the decision to place Trevino in a solitary cell was not made for discriminatory reasons but, instead, was based on "an actual and legitimate risk of other inmates physically harming him." Phillips Aff. at ¶¶ 12-15. Because defendants have met their initial burden, Trevino

has the burden to go beyond his pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995))). As the Eighth Circuit Court of Appeals has explained,

> The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," and must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Ricci*, 129 S. Ct. at 2677, quoting *Matsushita*, 475 U.S. at 587, 106 S. Ct. 1348.

*Torgerson v. City of Rochester*, 643 F.3d 1031, 1042-43 (8th Cir. 2011) (en banc). Trevino has not met his burden to provide evidence showing that defendants possessed discriminatory intent. Indeed, Trevino has produced no evidence supporting his claims and failed to respond to defendants' statement of undisputed facts. Because Trevino has the burden proof and has failed to show that any genuine issues of material fact exist with regard to this element of his ADA claim, his objection is overruled.

### *III.    CONCLUSION*

I accept Judge Strand's Report and Recommendation and, therefore, grant defendants' motion for summary judgment. All of plaintiff Trevino's claims against the defendants are dismissed. The Clerk of Court shall enter judgment accordingly.

**IT IS SO ORDERED**.

**DATED** this 13th day of May, 2015.

	*[signature: Mark W. Bennett]*
	_____
	MARK W. BENNETT
	U.S. DISTRICT COURT JUDGE
	NORTHERN DISTRICT OF IOWA